

**IT IS ORDERED as set forth below:**

**Date: March 30, 2018**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| Peterson Adams and<br>Suzanne Renee Adams, | CASE NO. 16-52669-BEM |
| Debtors. | CHAPTER 7 |
| Bank of America, N.A., | |
| Plaintiff, | |
| v. | ADV. PROC. NO. 17-5171-BEM |
| Peterson Adams, Suzanne Renee Adams,<br>Deutsche Bank National Trust Company,<br>Turtle Creek Community Association, Inc., and<br>Neil C. Gordon, | |
| Defendants. | |

## ORDER ON TRUSTEE'S MOTION FOR JUDGMENT ON THE PLEADINGS

### I.    Introduction

This matter comes before the Court on Defendant  Neil C. Gordon's (the "Trustee")

Motion for Judgment on the Pleadings [Doc. 19] ("Motion") and Memorandum of Law in Support [Doc. 20] ("Memorandum of Law"), Plaintiff Bank of America, N.A.'s ("BANA") Response in Opposition to Trustee's Motion for Judgment on the Pleadings [Doc. 21] ("BANA's Response"), and the Trustee's Reply to Bank of America, N.A.'s Response in Opposition [Doc. 25] ("Trustee's Response"). As further explain below, the Court denies the Motion.

## II.    Standard on Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) (applicable here through Federal Rule of Bankruptcy Procedure 7012) states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "[A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice." 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.). Accordingly, "[j]udgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "When reviewing … a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), [the Court] accept[s] as true all allegations in the complaint and construe[s] them in the light most favorable to the nonmoving party." *Crumpton v. Stephens (In re Northlake Foods, Inc.)*, 715 F.3d 1251, 1255 (11th Cir. 2013) (citing *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir.1998)).

The Trustee in his Memorandum of Law and Reply and BANA in its Response agree that the material facts are undisputed, but the content of these filings suggest otherwise.  In the

Trustee's Memorandum of Law, the Trustee states that "based on the pleadings currently before the Court, there are no material facts in dispute," and "[t]he material facts in this matter are undisputed." Trustee's Memorandum of Law at 2. BANA agrees with that those statements in its Response but notes omissions from that the Memorandum of Law's statement of facts: "As Trustee states in his brief, many of the facts are undisputed. After all, the Court must take BANA's allegations as true and draw all reasonable inferences in favor of BANA.  Because Trustee has omitted certain facts from his recitation, however, BANA recites the relevant facts itself." BANA's Response at 3 (citation omitted).

In the Trustee's Reply, the Trustee responds to the above excerpt from BANA's Response as follows:

> [I]t is important to address Plaintiff's assertion that because Trustee's motion is a motion brought under Rule 12(c), the Court must accept as true all allegations in Plaintiff's Complaint. Trustee does not dispute this assertion. Trustee does, however, dispute the relevancy of any documents or alleged facts that are outside the Property's chain of title. In short, none of the documents in the Property's chain of title provide Trustee, in his role as a hypothetical bona fide purchaser, notice of Plaintiff's alleged interest in Mr. Adam's Interest in the Property. *As a result, only those facts set forth in the background section of Trustee's Memo are relevant to the outcome of Trustee's motion. All other facts cited by Plaintiff in its Response are of no consequence.*
> …
> *Moreover, Trustee has denied the majority, if not all, of these allegations in his Answer.*

Trustee's Reply at 4 & n.2 (emphasis added).

The Court disagrees with the Trustee's apparent position that the Court should rule on the Motion based only on those facts the Trustee considers material. The Court will assume the truth of the well-pleaded allegations in the Complaint. The Court's recitation of the facts (in the next section) notes the allegations denied in the Trustee's Answer.[1]

---

[1] The Trustee denies facts that are clearly material.  "Although these facts are contested …, they must be accepted as true in a motion for judgment on the pleadings." *Swerdloff v. Miami Nat. Bank*, 584 F.2d 54, 57 (5th Cir. 1978)

### III.     Facts as Alleged in Complaint, Relief Sought, and Procedural History

#### A.     Facts

On February 12, 2016, Peterson Adams and Suzanne Adams (collectively, "Debtors") filed a voluntary petition under Chapter 13 of the United State Code, initiating this case (the "Instant Bankruptcy"), which was converted to Chapter 7 on July 11, 2016. Complaint ¶ 4. Defendant Neil C. Gordon was appointed as Chapter 7 Trustee in the Debtors' Chapter 7 case. Complaint ¶ 7. This adversary proceeding involves real property located at 1312 Turtlebrook Lane, Lawrenceville, Gwinnett County, Georgia (the "Property"). Complaint ¶ 8.

On or about February 1, 2011, Deutsche Bank National Trust Company ("DBNTC") purchased at a foreclosure real property located at 1312 Turtlebrook Lane, Lawrenceville, Gwinnett County, Georgia (the "Property") Complaint ¶¶ 8– 9. Subsequently, DBNTC, acting through an attorney in fact, Select Portfolio Servicing, Inc., and the Debtors entered into a Purchase and Sale Agreement (the "PSA") with a binding agreement date of May 6, 2011, under which DBNTC agreed to sell the Property to the Debtors for $190,000.00. Complaint ¶ 10.[2] The PSA is attached as Exhibit A to the Complaint. Under the PSA, the closing of the sale was scheduled for June 17, 2011. Complaint ¶ 12.[3]

On June 7, 2011, before the closing, the Debtors submitted a proposed amendment to the PSA, removing Mr. Adams from the PSA and making Mrs. Adams the only purchaser (the "Amendment"). DBNTC, acting through its attorney in fact, accepted the Amendment on June 13, 2011. Complaint ¶ 13.[4] The Amendment is attached to the Complaint as Exhibit B. Two

---

(citing *Stanton v. Larsh*, 239 F.2d 104 (5th Cir. 1957)). Opinions of the U.S. Court of Appeals for the Fifth Circuit issued before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).
[2] The trustee denies this allegation due to insufficient knowledge or information.
[3] The trustee denies this allegation due to insufficient knowledge or information.
[4] The trustee denies this allegation due to insufficient knowledge or information.

weeks before the Amendment, however, DBNTC executed a Special Warranty Deed (the "SWD") naming both of the Debtors as grantees, and sent that deed to the closing attorney to hold in escrow pending the closing of the sale. Complaint ¶ 15.[5]

To finance her purchase of the Property, Mrs. Adams applied for a loan, submitting an application (the "Loan Application") for a loan in the amount of $185,183.00. In the Loan Application, Mrs. Adams represented that the loan was for the purchase of the Property and that title to the Property would be held in her name.[6] Complaint ¶ 16. The Loan Application is attached to the Complaint as Exhibit C. Based on Mrs. Adams's representations in the Loan Application, United Wholesale Mortgage ("UWM") agreed to provide the financing for Mrs. Adams's purchase of the Property, a purchase money loan in the amount of $185,183.00 (the "Purchase Money Loan"). Complaint ¶ 18.[7]

The closing of the sale under the PSA, as amended, was held on June 22, 2011. Complaint ¶ 19.[8] At the closing, Mrs. Adams, as purchaser or grantee, executed a number of documents, including the following: a HUD-1 Settlement Statement (the "Settlement Statement"); an Acknowledgment and Receipt of Settlement Statement (the "Acknowledgment"); an Occupancy and Financial Status Certification (the "Occupancy Certification"), acknowledging her understanding that her lender was making its loan to her based on the representations and statements she made in the Loan Application; an Addendum to Special Warranty Deed Dated 6/22/11 from DBNTC (the "Addendum"), acknowledging that she was acquiring the Property in "as is" condition, waiving certain warranties, and accepting certain exceptions from and restrictions to the warranties made under the conveyance to her. Complaint

---

[5] The trustee admits that DBNTC executed the SWD naming both Debtors as grantees but denies the remainder of this allegation due to insufficient knowledge or information.
[6] The trustee denies this allegation due to insufficient knowledge or information.
[7] The trustee denies this allegation due to insufficient knowledge or information.
[8] The trustee denies this allegation due to insufficient knowledge or information.

¶ 20.[9]

Each of the Settlement Statement, the Acknowledgment, the Occupancy Certification, and the Addendum references Mrs. Adams as the sole purchaser or grantee of the Property. Complaint ¶ 21. [10]   The Settlement Statement, the Acknowledgment, the Occupancy Certification, and the Addendum are attached to the Complaint as Exhibits D, E, F, and G, respectively.

On June 22, 2011 Mrs. Adams also signed a promissory note in favor of UWM, evidencing her obligation to repay the Purchase Money Loan (the "Note"), and a Security Deed, conveying the Property to Mortgage Electronic Registration Systems, Inc., as nominee for UWM, it successors and assigns, as security for the repayment of the Purchase Money Loan (the "Security Deed"). Complaint ¶ 23.[11] The Note and Security Deed are attached to the Complaint as Exhibits H and I, respectively. The Security Deed was subsequently assigned to Plaintiff as evidenced by an Assignment of Security Deed. Complaint ¶ 25.[12] The Assignment of Security Deed is attached to the Complaint as Exhibit J.

Mr. Adams was not a party to the closing, and none of the documents executed at the closing on June 22, 2011, reference Mr. Adams as a purchaser or grantee of the Property; all of them refer only to Mrs. Adams as the purchaser or grantee. Complaint ¶ 26.[13] Nevertheless, and despite the Amendment to the PSA, when the conveyancing documents, including the Security Deed, were recorded in the deed records of Gwinnett County on July 5, 2011, the closing attorney recorded the SWD, rather than a deed with Mrs. Adams as the sole grantee. Complaint ¶

---

[9] The trustee denies this allegation due to insufficient knowledge or information.
[10] The trustee denies this allegation due to insufficient knowledge or information.
[11] The trustee denies this allegation due to insufficient knowledge or information.
[12] The trustee denies this allegation due to insufficient knowledge or information.
[13] The trustee denies this allegation due to insufficient knowledge or information.

27.[14]

The use and recording of the SWD was the result of mistake and contrary to the intent of the parties to the sale transaction, including DBNTC, Mrs. Adams, and UWM. Complaint ¶ 28.[15] As evidenced by the Amendment and those documents executed at the closing on June 22, 2011, both the parties to the sale transaction and Mr. Adams intended that Mrs. Adams would be the sole grantee and purchaser of the Property and that Mr. Adams would not have a title interest in the Property. Complaint ¶ 29.[16]

Sometime following the closing, DBNTC discovered the mistake. In an effort to remedy the mistake, on February 12, 2015, DBNTC, again through its attorney-in-fact, executed a Corrective Special Warranty Deed (the "Corrective Deed"), naming only Mrs. Adams as grantee and noting that "[t]he purpose of this [Corrective Deed] is to correct the Grantee." Complaint ¶¶ 30–31.[17] The Corrective Deed is attached to the Complaint as  Exhibit K.

On February 25, 2015, the Corrective Deed was recorded in Deed Book 53397, Page 664, Gwinnett County, Georgia records and was cross-indexed with the SWD. Along with a letter dated April 13, 2015 (the "Corrective Deed Letter"), the Corrective Deed was mailed to Mrs. Adams. Complaint ¶ 33.[18] The Corrective Deed Letter is attached to the Complaint as Exhibit L.

Mr. Adams did not accept delivery of the SWD or otherwise accept ownership of the Property, and in fact rejected ownership of the Property.  Mr. Adams's rejection of ownership of the Property is evidenced by Debtors' voluntary petition filed in the Instant Bankruptcy (the "Voluntary Petition"). In Schedule A/B to the Voluntary Petition, the Debtors stated, under

---

[14] The trustee admits that the SWD and Security Deed were recorded in the real property records of Gwinnett County but denies the rest of the allegation due to insufficient knowledge or information.

[15] The trustee denies this allegation due to insufficient knowledge or information.

[16] The trustee denies this allegation.

[17] The trustee denies these allegations due to insufficient knowledge or information.

[18] The trustee admits that on or around February 25, 2015, the Corrective Deed was recorded beginning at Page 664 of Deed Book 53397 of the real property records of Gwinnett County, but denies the rest of the allegation due to insufficient knowledge or information.

penalty of perjury, that of the two of them, only Mrs. Adams has an interest in the Property. Complaint ¶¶ 36–38.[19] The Voluntary Petition and Debtors' schedules are attached to the Complaint as Exhibit M.

Mr. Adams's rejection of ownership of the Property is further evidenced by filings in Debtors' prior Chapter 13 bankruptcy, Case No. 15-bk-62885-bem in the United States Bankruptcy Court of the Northern District of Georgia (the "Prior Bankruptcy"). In the Prior Bankruptcy, which Debtors initiated on July 9, 2015, the Debtors' initial Schedule A indicated that both Debtors had an interest in the Property. When the Debtors then sought approval of their Chapter 13 plan, the Chapter 13 trustee filed an objection to confirmation of the plan (the "Objection"), objecting on a number of grounds, including on the ground that the Debtors' "Schedule A fails to correctly reference the Debtors [sic] interest in real property which is the subject of this Chapter 13 estate." In the face of that objection, the Debtors filed amended schedules, including an amended Schedule A (the "Amended Schedule A"), stating in Amended Schedule A that only Mrs. Adams had an interest in the Property. Complaint ¶ 40.[20] The Objection and the amended schedules containing Amended Schedule A are attached to the Complaint as Exhibits N and O, respectively.

On December 29, 2016, the Trustee filed in the Instant Bankruptcy Trustee's Motion for Authority to (I) Sell Property of the Bankruptcy Estate Free and Clear of Liens, Claims, Interests, and Encumbrances, and (II) Disburse Certain Proceeds at Closing (the "Motion to Sell"), seeking authority to sell the Property free and clear of liens, including the Security Deed. By Order entered in the Instant Bankruptcy on January 27, 2017 (the "Free and Clear Order"), the Court granted the Motion to Sell. Pursuant to the Free and Clear Order, the Trustee sold the Property

---

[19] The trustee denies these allegations.
[20] The trustee denies these allegations.

on April 7, 2017, and, on information and belief, after payment of those amounts the Free and Clear Order permitted the Trustee to pay from the proceeds, the Trustee received in excess of $220,000.00 in net proceeds (the "Net Proceeds"). Complaint ¶¶ 47–49.

Pursuant to 11 U.S.C. §§ 506(a) and 552, the Security Deed attaches to those proceeds to the same extent that it attached to the Property prior to the sale under the Free and Clear Order. Complaint ¶ 50.[21]

### B.    Relief Sought

In Count One of the Complaint, BANA seeks reformation of the SWD or, alternatively, of the Security Deed because due to mistake, neither the SWD nor the Security Deed reflect the intent of the parties to the transaction at issue. BANA seeks reformation of the SWD to reflect the intent that Mrs. Adams be the sole grantee of DBNTC. Alternatively, BANA requests that the Security Deed be reformed to add Mr. Adams as a grantor, to reflect the intent that the entirety of the Property serve as collateral for the Purchase Money Loan.

Counts Two, Three, and Four are alternative counts for (respectively) an equitable lien on the portion of the Net Proceeds attributable to Mr. Adams's interest in the property, a decree that Mr. Adams held his interest in the Property in a constructive trust for BANA's benefit, and a determination that BANA has a valid and perfected lien against the entirety of the Net Proceeds up to the full amount owed under the Note and Security Deed or that BANA is entitled to the entirety of the Net Proceeds up to the full amount owed.

### C.    Trustee's Answer and Counterclaims

On August 18, 2017, the Trustee filed his Answer, Affirmative Defenses, and Counterclaims [Doc. 7] ("Answer"). As indicated above, the Trustee denies many of the

---

[21] The Trustee admits that the lien created by the Security Deed attached to the Net Proceeds with the same extent, validity, and priority that it had in the Property, but denies the rest of the allegation.

Complaint's allegations and denies that BANA is entitled to any of the relief sought. The Answer's affirmative defenses include, in relevant part, that the Trustee is not subject to the equitable relief sought because of the Trustee's status as a hypothetical bona fide purchaser of real property under 11 U.S.C. § 544(a)(3).

The Trustee asserts four counterclaims in the Answer: (1) avoidance under § 544(a)(3) of any transfer of Mr. Adams's interest in the Property to BANA "resulting from the execution of the Security Deed, the Corrective Deed, or for any reason"; (2) avoidance under § 544(a)(1) of any transfer of Mr. Adams's interest in the Property to BANA "resulting from the execution of the Security Deed, the Corrective Deed, or for any reason"; (3) recovery under § 550(a) from BANA of any interest it holds in Mr. Adams's interest in the Property; and (4) preservation of any avoided transfer under § 551.

The SWD, as well as the documents attached to and recorded with the SWD, including the Addendum are attached to the Answer as Exhibit A.

### D.      Subsequent Pleadings and Filings

On September 8, 2017, BANA filed an Amended Complaint [Doc. 12] that corrected the Complaint's several incorrect references to exhibits but added no new substantive allegations. Also on September 8, BANA filed an Answer to Trustee's Counterclaim [Doc. 13] that asserted, in relevant part, the affirmative defense that the "Trustee, whether in his role as hypothetical bona fide purchaser or his role as a hypothetical lien creditor, had constructive and inquiry notice that Mr. Adams had no interest in the Property and/or of Plaintiff's prior and superior equitable claims against and interests in Mr. Adams's interest in the Property." Answer to Trustee's Counterclaim at 2.

The Trustee filed an Amendment to Trustee's Answer [Doc. 17] denying the allegations

10

in BANA's Amended Complaint due to insufficient knowledge and information. And, on December 7, 2017, the Trustee filed the Motion and Memorandum of Law. In the Motion, the Trustee seeks a judgment against BANA denying BANA's requests for reformation, for an equitable lien, and for a constructive trust, and seeks a judgment finding that the Trustee has a claim to Mr. Adams's interest in the Property that is superior to any claim of BANA.

## IV.    Analysis

The Trustee argues that BANA is not entitled to reformation of the SWD because BANA was not an original party to the SWD and is not in privity with any party to the SWD. The Trustee also argues that BANA is not entitled to any of the equitable relief sought because under § 544(a)(3), the Trustee stands in the shoes of a hypothetical bona fide purchaser of Mr. Adams's interest in the Property, and under Georgia law, equity will not grant relief as to a bona fide purchaser for value without notice.  Nothing in the SWD or Security Deed, the Trustee argues, provides notice of BANA's interest in Mr. Adams's interest in the Property.[22]

BANA argues that it can reform the SWD because it is the assignee of the Security Deed and depends on the SWD for its title and is a successor under the SWD and may reform it to conform it to the intent of the parties. BANA also argues that a bona fide purchaser of Mr. Adams's interest in the Property would have constructive notice of BANA's interest in Mr. Adams's interest in the Property because of the Corrective Deed and because the SWD and Addendum, when taken together, are sufficiently ambiguous to trigger the duty to inquire.

### A.    Reformation and Privity

Reformation is an equitable remedy under O.C.G.A. § 23–2–25, which states, "If the form of conveyance is, by accident or mistake, contrary to the intention of the parties in their

---

[22] Aside from the Trustee's notice argument, the Trustee does not address the merits of BANA's request for reformation of the Security Deed, request for imposition of an equitable lien, and request for imposition of a constructive trust.

contract, equity shall interfere to make it conform thereto." The Court must take as true BANA's contention that the parties involved in the sale, financing, and purchase of the Property intended that the Property be conveyed to Mrs. Adams alone and intended that the Security Deed encumber the entire Property rather than only an undivided one- half interest.

The availability of reformation (and equitable remedies generally) is limited by O.C.G.A. § 23–2–34, which states, "Equity will grant relief as between the original parties or their privies in law, in fact, or in estate, except bona fide purchasers for value without notice." The Trustee's argument that he is a bona fide purchaser for value without notice applies to all of BANA's requested relief and is discussed separately below. The notice issue aside, the Trustee argues that BANA is not entitled to reformation because BANA was not an original party to the SWD and is not in privity with any party to the SWD.

The Trustee argues primarily that BANA lacked privity with Mr. Adams because BANA did not have a successive relationship to the same right in the same property that Mr. Adams has. On this point the Memorandum of Law relies entirely on *Hilton v. Hilton*, 202 Ga. 53, 41 S.E.2d 880 (1947). In *Hilton*, three people (which the Court will refer to as Grantor, Grantee One, and Grantee Two) agreed that Grantor would sell to and convey  half of certain property to Grantee One and the other half to Grantee Two. Instead, and through mistake, Grantor conveyed more than half of the property to Grantee One and conveyed the balance to Grantee Two. The Supreme Court of Georgia held that Grantee Two was not entitled to reformation of the deed from Grantor to Grantee One because (1) Grantee Two was not a party to that conveyance and (2) Grantee Two lacked privity with Grantee One "for the reason that privity denotes successive relationship to the same right in the same property, and the plaintiff … [sought] to assert an independent right adverse to that held by the defendant under his deed of conveyance." *Hilton*,

202 Ga. at 54, 41 S.E.2d at 881. The Trustee argues in the Memorandum of Law that BANA is analogous to Grantee Two in *Hilton* in that BANA does not hold the same rights in the Property held by Mr. Adams and Mrs. Adams but rather an entirely different estate. Thus, Trustee argues that BANA "seeks 'to assert an independent right adverse to that held by' Mr. Adams." Memorandum of Law at 9.

In its Response, BANA quotes *Phillips v. Phillips*, 211 Ga. 305, 309, 85 S.E.2d 427, 430–31 (1955), for the following privity test: "[T]he privity in law, in fact, or in estate, which will permit one to [reform] . . . [an instrument] to which he is not a party . . . rests upon some actual mutual or successive relationship to the same right of property." BANA's Response at 10 (alterations made by BANA). The Trustee in his Reply concurs with BANA that this excerpt from *Phillips* is the correct test. The Trustee and BANA, however, emphasize different parts of the test.

BANA emphasizes the "successive relationship" between it, Mrs. Adams, and DBNTC. BANA, in its Response at 10–11, quotes *Rawson v. Brosnan*, 187 Ga. 624, 628, 1 S.E.2d 423, 425 (1939), for "the following test for determining the existence of such a successive relationship":

> If A's conveyance to B involves a mutual mistake of fact, and subsequently B conveys to C, then C, being a successor to the same right in the same property, is entitled to reformation as against A. … But if A successively conveys separate, even adverse, rights in the same property to both B and C, C does not become the successor of A and stand in his shoes with respect to a different property right previously conveyed, not to him, but to B, the adverse claimant.

"In other words," BANA continues, "the privity which will permit one to reform an instrument to which one is not a party exists when one claims as a successor under that instrument." BANA's Response at 11. BANA purports to be a successor under the SWD because BANA is the assignee of the Security Deed and depends on the SWD for its title: "Here, Mrs.

13

Adams received her title under the [SWD]. She then conveyed the Property under the Security

Deed …. Her execution and delivery of the Security Deed served to convey the Property, which

she had just received under the [SWD], just as if she had conveyed it to a bona fide purchaser. …

BANA, being the assignee of the Security Deed, depends on the [SWD] for its title and, thus, is a

successor under the [SWD] and may reform it to conform it to the intent of the parties as

expressed in the Amended PSA." BANA's Response at 11–12. BANA states that the *Hilton*

opinion "is inapposite" as "merely an application of the *Rawson* privity test to a set of facts

dissimilar to those at bar." BANA's Response at 12.

The Trustee, on the other hand, emphasizes the lack of "the same right of property,"

noting that the rights transferred under the SWD are not the same as those transferred under the

Security Deed. The Trustee argues that "a  mortgagee to a security deed does not hold the same

rights as the mortgagor through which it took its interest," noting differences in right to

possession, to quiet enjoyment, and to make improvements, as well as the differences in

character of title held (i.e., legal versus equitable). Trustee's Reply at 5–6. The Trustee

concludes, "[W]hile Plaintiff may have  legal title to Mrs. Adams' interest in the Property, it

does not hold equitable title like Mrs.  Adams.  As a result, under the law cited above and that

cited in Trustee's Memo[random of Law], there is not  sufficient privity of estate.  Equitable

reformation is not available to Plaintiff." Trustee's Reply at 6.

The Court concludes that BANA lacks the privity necessary to seek reformation of the

SWD. BANA provided no authority in which a security deed grantee sought, let alone

successfully sought, to reform the original deed to the grantor. The Court could locate no such

authority in its own research. BANA concurs with the Trustee that the general privity rule as

stated in *Phillips*, *Rawson*, and *Hilton*—that privity rests upon some actual mutual or successive

relationship to the same right of property—applies here. Under those opinions, BANA lacks the privity to seek reformation of the SWD.

As an initial matter, the *Rawson* opinion on which BANA relies did not purport to set out a test for successive relationship or privity against which all fact patterns must be compared to determine whether privity exists. The court in *Rawson* was merely providing an example of a situation and relationship that does not result in privity. That the facts in this case are distinguishable from those where privity is found lacking—such as those in *Rawson*'s hypothetical example—says very little about whether privity exists under the facts in this case.

"Persons are in privity, not with property, but with persons as related to the same right in the same property." *Rawson v. Brosnan*, 187 Ga. 624, 628, 1 S.E.2d 423, 425 (1939). Moreover, "[t]he recognized extension under [O.C.G.A. § 23-2-34] in favor of those in privity with the original contractors does not mean that the terms of the contract can be altered and reformed by one who does not claim as a successor under the contract sought to be reformed but under another contract setting up different and inconsistent rights." *Nationwide Mut. Ins. Co. v. Architectural Glazing Sys., Inc.*, No. 1:13-CV-01069-ELR, 2015 WL 11438555, at *10 (N.D. Ga. Aug. 25, 2015) (brackets in original) (quoting *Hilton v. Hilton*, 202 Ga. 53, 54, 41 S.E.2d 880, 881 (1947)).

BANA is not a successor "under" the SWD. BANA is a successor, if at all, to rights held by Mrs. Adams. The rights BANA currently holds, however, are not held as a "successor" to Mrs. Adams, nor are they held mutually with Mrs. Adams. They are held by virtue of the Security Deed, which is a contractual grant of certain rights (and bare legal title) in the Property that were granted for the purpose of securing debt, and they are held adversely to Mrs. Adams.

BANA seeks reformation not as a successor to property rights held by any predecessor but as a creditor seeking to protect a secured position under rights granted in a separate document—the Security Deed. There is no "mutual or successive relationship to the same right" in the Property. Accordingly, the Court concludes that BANA lacks the privity necessary to seek reformation of the SWD.[23]

### B.    Notice

The Trustee next argues that BANA is not entitled to any of the equitable relief that it requests, whether equitable reformation, a constructive trust, or an equitable lien, because the Trustee is a bona fide purchaser under 11 U.S.C. § 544(a)(3) of Mr. Adams's interest without notice of BANA's alleged interest.

BANA argues that a bona fide purchaser for value would have had notice that the SWD is contrary to the intent of the parties and that Mr. Adams's interest in the Property is subject to BANA's claims in equity for two reasons: (1) the Corrective Deed, which was recorded prior to the Adams's bankruptcy, provided constructive notice of the error in the SWD, and (2) the SWD is made ambiguous by the incorporated Addendum's reference to a different deed, requiring an inquiry to resolve the ambiguity and leading to the discovery of the error in the SWD.

### 1.    Bona Fide Purchaser Under § 544(a)(3); Notice Under Georgia Law

Section 544(a)(3) states in relevant part that bankruptcy trustees have "the rights and powers of, or may avoid any transfer of property of the debtor … that is voidable by—a bona fide purchaser of real property … from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

---

[23] The Court's conclusion on this point, of course, is irrelevant to BANA's claim to reformation of the Security Deed.

"Thus, when determining whether a Trustee can avoid a lien created before the bankruptcy petition was filed, the Trustee's actual knowledge of the lien is irrelevant. His right to avoid is determined by whether, under state law, a bona fide purchaser of the property would have taken the property subject to the lien. If a bona fide purchaser would not have taken it subject to the lien, then neither would the Trustee." *SunTrust Bank, N.A. v. Macky (In re McCormick)*, 669 F.3d 177, 180 (4th Cir. 2012).

Under Georgia law, "[t]o qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue. A purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title. Conversely, a purchaser is not charged with constructive notice of interests or encumbrances which have been recorded outside the chain of title." *Va. Highland Civic Ass'n, Inc. v. Paces Props., Inc.*, 250 Ga. App. 72, 74, 550 S.E.2d 128, 130 (2001) (footnotes omitted). "Chain of title includes all recorded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument." *VATACS Grp., Inc. v. HomeSide Lending, Inc.*, 276 Ga. App. 386, 391, 623 S.E.2d 534, 539 (2005).

Included in the concept of constructive notice is the duty to inquire. These concepts are codified in O.C.G.A. § 23–1–17, which states in relevant part, "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led." Accordingly, "when information appears in the county's records or occurs during the sale of real property that would excite a reasonable purchaser's attention regarding the existence of a lien or other issue affecting the title to the property, the purchaser has a duty to make a further inquiry. The notice which is sufficient to create this duty

to inquire is also constructive notice of 'everything to which it is afterwards found that such inquiry might have led.'" *Gallagher v. Buckhead Cmty. Bank*, 299 Ga. App. 622, 626, 683 S.E.2d 50, 54 (2009) (citation omitted) (quoting O.C.G.A. § 23–1–17). *See also Hamilton State Bank v. Kelly Capital Invs., LLC*, 335 Ga. App. 252, 260, 779 S.E.2d 757, 764 (2015) ("And, 'any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute' actual or constructive notice.") (quoting *Montgomery v. Barrow*, 286 Ga. 896, 897, 692 S.E.2d 351, 352 (2010)); *Detention Mgmt., LLC v. UMB Bank, N.A. (In re Mun. Corr. LLC)*, 501 B.R. 119, 132–33 (Bankr. N.D. Ga. 2013) (Bonapfel, J.) ("If the duty to inquire is triggered, a purchaser is deemed to have notice of everything that an inquiry would have uncovered. If a subsequent purchaser does not make an inquiry or explain why the inquiry would have been futile, 'it will be presumed that due inquiry would have disclosed the existent facts.'") (citation omitted) (quoting *Henson v. Bridges*, 218 Ga. 6, 10, 126 S.E.2d 226, 228 (1962)).

## 2.    Corrective Deed

BANA does not argue that transferring or recording the Corrective Deed corrected the mistaken transfer to Mr. Adams. BANA relies on the Corrective Deed solely for the notice the Corrective Deed allegedly provides:

> The mere existence of the Corrective Deed and its reference to the correction the [SWD] to remove Mr. Adams as a grantee would place a man of ordinary prudence fully upon his guard and induce serious inquiry. … Trustee asserts that the Corrective Deed is ineffective to correct the error in the [SWD]. Whether it can correct the error, however, is beside the point. It still provides constructive notice of its contents, including Deutsche Bank's assertion that Mr. Adams was not intended to be a grantee under the [SWD], requiring an inquiry that would lead to the confirmation of Deutsche Bank's assertion and BANA's equitable rights to correct the mistake.

BANA's Response at 18 & n. 5 (citation omitted).

18

BANA argues that the Corrective Deed provides constructive notice of its contents because it is cross-indexed with the SWD as permitted by O.C.G.A. § 15–6–77(o)(4), thereby putting the Corrective Deed in the Property's chain of title. Such cross-indexing, according to BANA, "serves to pull into a chain of title documents that might otherwise be outside it." BANA's Response at 16. To support this proposition, BANA elaborates as follows:

> That cross-indexed instruments must be considered to be within the chain of title to a property is perhaps best highlighted by the cross-indexing of affidavits. Under O.C.G.A. §§ 44-2-2 and 44-2-20, properly recorded affidavits give notice of their contents. But affidavits need not be executed by one having a present interest in property to be within a property's chain of title; they may be executed by anyone having personal knowledge of the matters set out in the affidavit. *See* O.C.G.A. § 44-2-20(a). They are within the chain of title because they are linked to instruments in the chain of title by cross-indexing.

BANA's Response at 16–17.

The Trustee disputes that the Corrective Deed is in the Property's chain of title, either standing alone or as cross-indexed to the SWD. The Trustee contends that the Corrective Deed is outside of the chain of title because DBNTC executed the Corrective Deed at a time DBNTC had no interest in the Property, and "a property's chain of title 'includes all recorded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument.'" Memorandum of Law at 14 (quoting *Stearns Bank, N.A. v. Rent-A-Tent, Inc. (In re Rent-A-Tent, Inc.)*, 468 B.R. 442, 456–57 (Bankr. N.D. Ga. 2012) (Drake, J.)). Moreover, according to the Trustee, cross-indexing does not have the effect that BANA ascribes to it: "[T]he only legal support that Plaintiff cites for this proposition is a discussion of affidavits recordable under O.C.G.A. § 44-2-20. However, as the Supreme Court of Georgia has explained, such documents are strictly construed and must contain a caption that meets the requirements of O.C.G.A. § 44-2-20(c); otherwise, they provide no notice, whatsoever." Trustee's Reply at 2–3 (citing *Dollar v. Thompson*, 212 Ga. 831, 834, 96

S.E.2d 493, 495–96 (1957)). The Trustee argues that even if the Court considered the Corrective

Deed as an affidavit, the Corrective Deed does not comply with O.C.G.A. § 44–2–20(c) and

therefore does not provide the Trustee with constructive or inquiry notice.

The Court agrees with the Trustee that the Corrective Deed it outside of the Property's

chain of title and that the Corrective Deed does not provide constructive notice of its contents.

BANA has not shown that cross-indexing a document to another document in a given chain of

title brings that first document into the chain of title, nor has BANA shown that the Corrective

Deed is otherwise in the Property's chain of title. "Chain of title includes all recorded

instruments pertaining to the property that are executed by an entity holding a recorded interest

in the property at the time of the execution of the instrument." *VATACS Grp., Inc.*, 276 Ga. App.

at 391, 623 S.E.2d at 539. The Corrective Deed is not in the Property's chain of title because

DBNTC had no interest in the Property when DBNTC executed the Corrective Deed.

BANA's statement that the cross-indexing "authorized by O.C.G.A. § 15–6–77(o)(4) …

serves to pull into a chain of title documents that might otherwise be outside of it" is

unsupported. Section 15–6–77, titled "Costs and fees enumerated," merely enumerates fees

superior court clerks may charge and collect. Section 15–6–77(o) does not authorize cross-

indexing, nor does it say anything about the effect of cross-indexing. It merely sets out the fee

charged when the clerk cross-indexes instruments on request and when cross-indexing is legally

required. [24]

---

[24] Sections 15–6–77(o)(1) and (o)(4) state as follows:

**(o)** In addition to the fees required by this Code section:
**(1)** When any instrument that is statutorily required to be cross-indexed, canceled, satisfied, or released or when a party requests the clerk to cross-index an instrument that is not otherwise required by law to be cross-indexed to any other previously recorded or affected document, the clerk of superior court shall charge an additional fee of $2.00 for each additional cross-indexed entry;
…

BANA's analogy to recordable affidavits under § 44–2–20 is inapposite. Setting aside that § 44–2–20 applies specifically to affidavits containing particular information—and not to recorded documents generally—nothing in § 44–2–20 states that cross-indexing a recordable affidavit makes the affidavit part of a property's chain of title. Section 44–2–20(c) provides captioning requirements for the affidavits set out in § 44–2–20(a), directs the clerk to record such affidavits, and provides instructions to the clerk in indexing the affidavits. It does not state the legal effect of such indexing. The legal effect of *recording* the affidavits is set out in subsection (a), which states that "[r]ecorded affidavits shall be notice of the facts therein recited … where such affidavits" pertain to certain, enumerated types of information. In other words, § 44–2–20 provides that recordable affidavits are constructive notice of their contents, not that cross-indexing an affidavit brings the affidavit into a property's chain of title.

The analogy to affidavits under § 44–2–20 breaks down further when comparing the indexing required under § 44–2–20(c) to what has been alleged. Subsection (c) requires the clerk to index the affidavits "in the name of the purported owner as shown by [the] caption in both grantor and grantee indexes." In other words, a recordable affidavit is automatically indexed *in the first instance* in the name of the purported property owner. Assuming the Corrective Deed were a recordable affidavit, the grantor index for the relevant time period would reflect an affidavit in Mr. Adams's name, providing notice to the world of its content. But BANA alleges merely that the Corrective Deed is cross-indexed to the SWD. Mr. Adams not being the grantor

---

**(4)** For any instrument that includes a request for the clerk to cross-index the instrument to a previously recorded or affected instrument but for which cross-indexing is not otherwise required by law, the clerk shall file, index, record, and cross-index each such instrument for which a request has been made upon receiving payment from the requesting party as specified by paragraph (1) of this subsection and written information specifying accurately the instrument to be cross-indexed ….

in the Corrective Deed, a search of the grantor index under Mr. Adams's name would not result in notice of the Corrective Deed.

BANA has not cited any statute analogous to § 44–2–20 stating that corrective deeds provide constructive notice of their contents. Nor has BANA provided any persuasive case law stating that cross-indexing has the effect BANA attributes to cross-indexing. BANA cites *In re Codrington*, 430 B.R. 287, 299 (Bankr. N.D. Ga. 2009) to support BANA's contention that recordable affidavits "are within the chain of title because they are linked to instruments in the chain of title by cross-indexing." BANA's Response at 17. That opinion does state, in dicta, "Sections 44–2–2 and 44–2–20 require the indexing of an instrument or affidavit dealing with title to land, thereby forming a link in a chain of title with respect to the grantors and grantees involved in transactions in real property." *In re Codrington*, 430 B.R. at 299. That statement in *Codrington* was made in a discussion of whether a properly attested waiver of borrower's rights attached to a defectively attested security deed can provide constructive notice of the security deed, when the security deed itself failed to provide constructive notice. The court concluded, "[T]he waiver has nothing to do with title to the Property. Even if the waiver were an affidavit, it would not be recordable because it contains no reference to a recorded deed in the chain of title or to the current owner of the Property. In short, Defendant has not shown that the waiver is in the chain of title. … [T]he waiver, standing alone, provides no constructive notice …." *Id.* (citation omitted).

The takeaway from the court's discussion of affidavits is that the waiver of borrower's rights did not provide the information required for a recordable affidavit dealing with title to land, including the information required for cross-indexing. The issue before the court was not whether cross-indexing brings a document into a chain of title.

For the above reasons, the Court concludes that the Corrective Deed did not provide constructive notice of its contents.

### 2.    Addendum to SWD

The Addendum's full title is "ADDENDUM TO SPECIAL WARRANTY DEED DATED 6/22/11 FROM: Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Aames Mortgage Investment Trust 2006-1, Mortgage Backed Notes to Suzanne Adams." It contains three pre-printed signatures lines, one for "Unofficial Witness," one for "Notary Public," and one for "Suzanne Adams." All three lines are signed.

BANA argues that the SWD and Addendum, viewed together, are ambiguous in three material ways, triggering the duty to inquire: (1) the SWD is dated May 31, 2011, but incorporates the Addendum, which refers to a special warranty deed dated June 22, 2011; (2) the SWD is a grant from DBNTC to Peter Adams and Suzanne Adams, but the Addendum refers to a special warranty deed from DBNTC to Suzanne Adams, without reference to Peter Adams; and (3) the SWD is a grant to Peter Adams and Suzanne Adams, but the Addendum—which is a waiver of warranties otherwise available to a grantee—refers only to and is signed only by Suzanne Adams.

These ambiguities, BANA argues, are sufficient to excite the attention of a purchaser of Mr. Adams's interest in the Property. BANA cites *Turner v. City of Tallapoosa*, 289 Ga. 138, 141, 709 S.E.2d 211, 213 (2011), for the proposition that ambiguities in a legal description put a purchaser on inquiry notice that there were problems with the description, and cites *In re Mun. Corr., LLC*, 501 B.R. at 132, and *Commodity Credit Corp. v. Wells*, 188 Ga. 287, 291 (1939), for the proposition that "[w]hen an instrument references a different instrument, a purchaser must inquire about that instrument." BANA's Response at 19–20. An inquiry made to the Adamses or

Deutsche Bank into the above ambiguities, according to BANA, would have led to the discovery

that Mr. Adams was not intended to have an interest in the Property and that the Security Deed

was intended to encumber the entire Property.

> The Trustee disputes that the Addendum raises any ambiguities:
>
> As to the addendum to the Special Warranty Deed (on which Plaintiff appears to place great weight) nothing in its terms contradict the grant from Deutsche Bank to Mr. Adams, as specifically set forth in the Special Warranty Deed. [Trustee's Answer, ¶¶ 81 and 82]; [Plaintiff's Reply, ¶ 3]. In addition, any arguments by Plaintiff that Mr. Adams' missing signature, or any other contents of the addendum, would put Trustee on notice of Plaintiff's interest are misplaced. Indeed, whether Mr. Adams or Mrs. Adams signed the addendum is irrelevant because it is the execution of the grantor (here, Deutsche Bank) that affects a transfer of real property and not the execution by a grantee. *See* Ga. Code Ann. § 44-5-30 (2016) (requiring that deeds to land be signed by the maker—i.e., the grantor—but not the grantee). Moreover, how the date of the addendum (June 22, 2011), could create a duty of inquiry is hard to understand. Quite frankly, it has a different date because Mrs. Adams signed it after Deutsche Bank signed the Special Warranty Deed. In sum, the Special Warranty Deed to Mr. and Mrs. Adams cannot lead to notice of Mr. Adams' grant of a security interest to Plaintiff, when no such grant or deed exists (recorded or not). In fact, such an argument is incomprehensible.

Memorandum of Law at 11. In the Trustee's Reply, the Trustee again argues that June 22, 2011,

refers to the date of the Addendum itself, as opposed to the date of a different deed:

> The June 22, 2011 date that Plaintiff points to as a smoking gun does not reference some other deed—it is the date of the addendum itself. That date is different than the date of the Special Warranty Deed because Mrs. Adams signed it after Deutsche signed the Special Warranty Deed. Indeed, if it were referencing some June 22, 2011 deed (as Plaintiff argues), where is that deed? Plaintiff has not presented it because it does not and never did exist.

Trustee's Reply at 3.

> Generally, "whether circumstances [are] sufficient to put purchaser on notice … [is] a

question of fact to be determined by the trier of fact." *Montgomery v. Barrow*, 286 Ga. 896, 899,

692 S.E.2d 351, 354 (2010) (citing *R.W. Holdco, Inc. v. SCI/RW Holdco, Inc.*, 250 Ga. App. 414,

415(1), 551 S.E.2d 825 (2001)).

The Trustee's arguments on this issue amount to factual disputes. The Trustee has not shown, as a matter of law, that the information in the Addendum is not "sufficient to excite attention" of a reasonable purchaser of Mr. Adams's interest in the Property.

BANA, as the non-movant, gets the benefit of all reasonable inferences. It is reasonable, if not correct as a matter of grammar, that "ADDENDUM TO SPECIAL WARRANTY DEED DATED 6/22/11" refers to a special warranty deed dated June 22, 2011, rather than to the date of the Addendum itself. The Court, therefore, must accept it as true that the Addendum refers to a special warranty deed dated June 22, 2011.

The Court cannot conclude, as a matter of law, that the Addendum's reference to a deed dated June 22, 2011, the Addendum's reference to Mrs. Adam as the only grantee, and the Addendum's lack of any reference to Mr. Adams are insufficient to excite a purchaser's attention and induce inquiry.  The Court cannot conclude, therefore, that a bona fide purchaser for value would be without constructive notice of the mistaken grant of the Property to both Adamses and the mistaken grant of a security deed encumbering only Mrs. Adams's interest in the Property.

## V.    Conclusion

For the forgoing reasons, it is **ORDERED** that the Trustee's Motion for Judgment on the Pleadings is ***denied***.

**END OF ORDER**

**Distribution List**

Austin E. James
Fidelity National Law Group
Suite 460
4170 Ashford Dunwoody Road
Atlanta, GA 30319

Lawrence W. Kelly
Fidelity National Law Group
Suite 460
4170 Ashford Dunwoody Rd.
Atlanta, GA 30319

Peterson Adams
1312 Turtlebrook Lane
Lawrenceville, GA 30043

Suzanne Renee Adams
1312 Turtlebrook Lane
Lawrenceville, GA 30043

Neil C. Gordon
Arnall, Golden & Gregory, LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

Michael J. Bargar
Arnall Golden Gregory, LLP
Suite 2100
171 17th Street, N.W.
Atlanta, GA 30363

Turtle Creek Community Association, Inc.
c/o Atlanta Community Services, Inc.
4485 Tench Road
Suite 2511
Suwanee, GA 30024

DEUTSCHE BANK NATIONAL TRUST
COMPANY
2000 Avenue of the Stars
Los Angeles, CA 90067

J. Keith Cornwell
Cornwell Law Firm, LLC
Suite 400
2180 Satellite Blvd.
Duluth, GA 30097